**COHEN TAUBER SPIEVACK & WAGNER P.C.**
Stephen Wagner
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 586-5800
swagner@ctswlaw.com

*Counsel to Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

THE PHARMA PARTNERS, LTD.,

Civ. No.: 19-cv-5735 (AJN)

Plaintiff,

-against-

LIPOSEUTICALS INC.,

Defendant.

-----------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Cohen Tauber Spievack & Wagner P.C.
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 586-5800

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS ..... 2

ARGUMENT ..... 5

I. The Court Should Disregard the Document on Which LSI Relies ..... 5

II. LSI Has Waived Any Right to Arbitrate this Dispute ..... 6

III. LSI Has Consented to Personal Jurisdiction in New York ..... 8

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 5

*Brown v. Dillard's, Inc.*,
430 F. 3d 1004 (9th Cir. 2005) ..... 7

*Bus. Credit & Capital II LLC v. Neuronexus, Inc.*,
No. 1:18-CV-03374 (ALC), 2019 WL 1426609 (S.D.N.Y. Mar. 29, 2019) ..... 8

*Doctor's Associates, Inc. v. Stuart*,
85 F. 3d 975 (2d Cir. 1996) ..... 8

*First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*,
118 F. 3d 892 (2d Cir. 1997) ..... 7

*Global Gold. Min., LLC v. Ayvazian*,
612 F. App'x 11 (2d Cir. 2015) ..... 8

*Nadeau v. Equity Residential Properties Mgmt. Corp.*,
251 F. Supp. 3d 637 (S.D.N.Y. 2017) ..... 7

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
102 F. 3d 660 (2d Cir. 1996) ..... 5

*Pani v. Empire Blue Cross Blue Shield*,
152 F. 3d 67 (2d Cir. 1998) ..... 5

*Yukos Capital S.A.R.L. v. Samaraneftegaz*,
592 Fed. App'x 8 (2d Cir. 2014) ..... 8

**Statutes**

28 U.S.C. § 1332 ..... 2

28 U.S.C. § 1441 ..... 2

28 U.S.C. § 1446 ..... 2

Plaintiff The Pharma Partners, Ltd., doing business as TPP Healthcare ("TPP" or "Plaintiff"), by its attorneys Cohen Tauber Spievack & Wagner P.C., hereby submits this memorandum of law in opposition to Defendant Liposeuticals Inc.'s ("LSI" or "Defendant") motion to dismiss the Amended Complaint (the "AC," attached as Exhibit A to the Declaration of Stephen Wagner, dated September 13, 2019 (the "Wagner Decl.")), pursuant to Rules 12(b)(2) (lack of personal jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted) of the Federal Rules of Civil Procedure (the "Motion"). For the reasons stated below, the Motion should be denied in its entirety.

**PRELIMINARY STATEMENT**

LSI purports to predicate the Motion on documentary evidence, lack of subject matter jurisdiction, and lack of personal jurisdiction. LSI's contentions are without merit and should be rejected.

First, LSI contends that documentary evidence proves that TPP's introduction of a third-party company to LSI, which underlies this action, predates the signed agreement between LSI and TPP (the "Agreement," Wagner Decl. Ex. B) and, therefore, TPP has not stated a claim upon which relief may be granted. This argument fails for either or both of the following reasons: First, the AC alleges that TPP made the introduction after the Agreement was executed, and the so-called contradictory documentary evidence is outside the four corners of the AC and should not be considered on a motion to dismiss. Second, even if this Court were to consider this document, and even if the introduction occurred before execution of the Agreement, it is of no moment, as the plain language of the Agreement explicitly covers introductions made prior to its execution.

Second, LSI contends that this Court lacks subject matter jurisdiction because the Agreement contains an arbitration clause. LSI is being disingenuous at best. TPP attempted to

arbitrate this claim more than seven months ago by sending a demand for arbitration to LSI. LSI blatantly, intentionally, and without justification ignored that demand. As a result, LSI has waived its right to arbitrate; it cannot now rely on an arbitration clause that it has already so wantonly disregarded.

Third, LSI contends that this Court lacks personal jurisdiction because LSI does not conduct any purposeful business in New York. This fails as well, because LSI consented to personal jurisdiction in New York, as the Agreement provides for dispute resolution to take place in New York.

For these reasons, as more fully set forth below, the Motion is devoid of merit and should be denied in its entirety.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On May 20, 2019, TPP filed a Complaint against LSI in the Supreme Court for the State of New York, New York County, for breach of the Agreement. (Wagner Decl. Ex. C) On June 19, 2019, LSI removed the case to this Court pursuant to 28 U.S.C. §§ 1332(1), 1441 and 1446, and SDNY Local Civil Rule 81.1. (Wagner Decl. Ex. D) On July 11, 2019, LSI moved to dismiss the Complaint and, on August 12, 2019, TPP filed the AC. LSI filed the Motion on August 30, 2019.[1]

The Agreement, dated as of January 6, 2015, provided that TPP would act as LSI's strategic advisor. (AC, Wagner Decl. Ex. A, ¶ 8; Agreement, Wagner Decl. Ex. B, ¶ A) In consideration for such services, LSI agreed to pay TPP if, during the 18-month period following execution of the Agreement, LSI entered into a "Transaction," defined as any completed transaction resulting

---

[1] LSI's motion to dismiss is untimely as it was filed more than 14 days after TPP served the Amended Complaint. *See Fed. R. Civ. P.* 15(a)(3) ("Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.")

in "Business Development in China," with any party that TPP introduced to it during the relevant contract period. (*Id.* ¶ C)

"Business Development in China" is defined, *inter alia*, as "identification, negotiation and finalizing business development opportunities that include commercialization of LSI's products and services, development of manufacturing, distribution, marketing, licensing and raising of equity or debt capital, on behalf of LSI." (*Id*. at pg. 1)

LSI agreed to pay TPP's fee in accordance with the terms of Paragraphs B.2 and C of the Agreement. (AC, Wagner Decl. Ex. A, ¶ 10; Agreement, Wagner Dec. Ex. B) Paragraph B.2 of the Agreement provides as follows:

> When a Development of Strategic Partnership Transaction is consummated, [LSI] will pay in full to [TPP] a 'Placement Fee' in cash at the initial and all subsequent closing(s) of the Transaction as follows:
>
> a. Upon the consummation of a licensing transaction (up-front, milestone and royalty payments), a Placement Fee between 4 to 8% of amounts exchanged.
>
> b. Upon consummation of a distribution transaction (total amount being sold), a Placement Fee of 4 to 8% of amounts exchanged.
>
> c. Upon the consummation of a manufacturing transaction (amount saved in manufacturing partnerships), a Placement Fee of 4 to 8% of value created.
>
> [LSI]agrees to pay TPP the aggregate Placement Fees as follows:
>
> A fee of 8% of the first $5,000,000, plus 6% of the second $5,000,000, plus 4% of the balance of the aggregate Development of Strategic Partnership Transaction.

(Agreement, Wagner Decl. Ex. B, ¶ B.2)

The AC alleges that after the Agreement was signed, TPP introduced LSI to Nhwa Pharma Corp. ("Nhwa"), a pharmaceutical company based in China. (AC, Wagner Decl. Ex. A, ¶¶ 14-15) On or about February 2, 2016, Nian Wu, LSI's CEO, messaged Tony Chu, TPP's Managing Partner, that he intended to terminate the engagement between TPP and LSI. (*Id.* ¶ 16) On or

about June 15, 2016, Nhwa announced that it entered into a licensing agreement with LSI. (*Id.* ¶ 17). Thus, LSI entered into a Transaction as defined in the Agreement.

On or about April 19, 2017, despite his acknowledgment that TPP introduced Nhwa to LSI, Mr. Wu, on behalf of LSI, refused to pay TPP in accordance with the agreed-upon terms. (*Id.* ¶ 19) Given that LSI's agreement with Nhwa constituted a Transaction, TPP was entitled to fees in accordance with the Agreement. (*Id.* ¶ 20)

Paragraph G of the Agreement provides:

> notwithstanding anything to the contrary contained herein, any controversy or claim arising out of or relating to this Letter Agreement or the breach hereof, shall be settled by binding arbitration in the State of New York.

(Agreement, Wagner Decl. Ex. B ¶ G) Accordingly, on February 13, 2019, TPP initiated an arbitration proceeding with the American Arbitration Association ("AAA"). (Wagner Decl. Ex. E) On February 19, 2019, a representative from the AAA notified the parties of a conference call to be held on February 26, 2019. (Wagner Decl. Ex. F) On February 26, 2019, TPP participated in the conference call with the AAA, but LSI failed to appear. (AC, Wagner Decl. Ex. A, ¶ 31) Immediately after the failed conference call, the AAA sent a letter to the parties and included a list of questions to be answered by each party by March 5, 2019. (Wagner Decl. Ex. G) On March 5, 2019, TPP responded to the AAA. (Wagner Decl. Ex. H) By letter dated March 14, 2019, the AAA informed TPP that LSI did not respond to the February 26 letter, and that the AAA would not proceed with the arbitration. (Wagner Decl. Ex. I) Given LSI's refusal to participate in the arbitration process, TPP initiated this action.

## ARGUMENT[2]

### I. The Court Should Disregard the Document on Which LSI Relies

LSI contends that the AC should be dismissed because TPP introduced Nhwa to LSI before the Agreement was executed. (*See* Mov. Br. at p. 4) In their moving papers, LSI contends that their first introduction by TPP to Nhwa took place on December 21, 2015, but the Agreement was not signed until January 6, 2016. As a result, LSI maintains that TPP has failed to state a claim upon which relief may be granted. As shown below, LSI's extra-pleading document should be disregarded not only because it is outside the four corners of the Amended Complaint, but also because Paragraph D of the Agreement covers this very situation.

In ruling on a motion to dismiss the complaint, courts limit their review to the allegations contained within the four corners of the complaint. *Pani v. Empire Blue Cross Blue Shield*, 152 F. 3d 67, 71 (2d Cir. 1998); *see also Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F. 3d 660, 662 (2d Cir. 1996) ("In considering a motion to dismiss for failure to state a claim …a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference"). The document upon which LSI relies is attached as an exhibit to the Wu Affidavit in support of the Motion. It was neither contained in, attached as an exhibit to, nor incorporated by reference into, the AC. Accordingly, on a motion to dismiss, it should be disregarded. .

But even if this Court were to consider the document, the Motion should still be denied. Assuming that TPP first introduced Nhwa to LSI prior to the execution of the Agreement, LSI is still obligated to pay TPP its fee. LSI, referred to as the "Company" in the Agreement, relies on

---

[2] On a motion to dismiss, a court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Paragraph C of the Agreement, which states: "[t]he engagement of TPP pursuant to the terms of this letter agreement shall be effective from the date of the Company's acceptance of this Letter Agreement." (*See* Mov. Br. at p. 5) LSI, however, tactically, as it must, ignores and disregards the very next paragraph of the Agreement, Paragraph D:

> The Company agrees to retain TPP as its exclusive strategic advisor pursuant with any "Business Development in China" transactions. The company agrees that all inquiries, indications of interest or offers received by the Company **prior to this date or at any time during the period of this Letter Agreement with respect to the Transaction shall be referred promptly to TPP and therefore shall be considered applicable to this Letter Agreement during the period of TPP's engagement pursuant to this Letter Agreement.**

(Agreement, Wagner Decl. Ex. B, ¶ D) (emphasis added) The AC alleges that TPP introduced LSI to Nhwa and that LSI and Nhwa entered into a licensing agreement. This constituted a Transaction as defined in the Agreement because it resulted in "Business Development in China," which included, among others, licensing.

LSI admits that "[a]t the time of the introduction with Nhwa, LSI and TPP were still in the process of agreeing on material terms of the finder's fee agreement." (*See* Mov. Br. at p. 5) In accordance with Paragraph D, the prior introduction is covered by the Agreement. Given the plain language contained in Paragraph D of the Agreement, the parties clearly agreed to include any introductions prior to January 6, 2016.

Accordingly, LSI's reliance on the so-called documentary evidence is misplaced and its argument should be rejected.

## II. LSI Has Waived Any Right to Arbitrate this Dispute

LSI contends that this Court lacks subject matter jurisdiction pursuant to the arbitration clause contained in Paragraph G of the Agreement. TPP, in good faith, attempted to arbitrate this

claim pursuant to the terms of the Agreement. TPP filed a demand for arbitration with the AAA in February 2019, but LSI refused to participate in the arbitration proceedings, forcing TPP to seek relief from the courts. Now, seven months later, LSI demands arbitration. LSI, however, has waived any right to arbitration as a matter of law. *See e.g., Nadeau v. Equity Residential Properties Mgmt. Corp.*, 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017) (arbitration agreement unenforceable due to the employer's breach by refusing to arbitrate).

In *Nadeau*, the agreement between the parties contained a mandatory arbitration agreement. One party sought arbitration, and, as here, the other party refused to participate. After the plaintiff sued, the defendant moved to compel arbitration. In denying the motion, the court (Briccetti, J.) held that although arbitration is favored, if the party seeking to compel arbitration "materially breached the Arbitration Agreement," it cannot "use the Agreement to compel arbitration. To hold otherwise 'would set up a perverse incentive scheme,' contrary to the FAA and common sense." *Id.* (internal citation omitted.) *See also Brown v. Dillard's, Inc.*, 430 F. 3d 1004, 1012 (9th Cir. 2005) (a defendant cannot compel plaintiff to honor an arbitration agreement of which it is itself in material breach).[3]

LSI attempted to hide its head in the sand, hoping their breach of the Agreement would disappear. Its actions should not be tolerated by this Court and it should not receive the benefit of the Agreement it so wantonly breached. [4]

[3] In *Nadeau*, the court quoted *Dillard*, which applies equally here. "Employers like [defendant] would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them. This tactic would be costless to employers if they were allowed to compel arbitration whenever a frustrated but persistent employee eventually initiated litigation. [The Court] decline[s] to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings."

[4] In the event this Court is inclined to order arbitration, TPP should receive all attorney's fees, costs and expenses expended in relation to the filing of the Complaint, Amended Complaint, and responding to the Motion. A Court "may, pursuant to its inherent equitable powers, assess attorney's fees and costs when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*, 118 F. 3d 892, 898 (2d Cir. 1997).

## III. LSI Has Consented to Personal Jurisdiction in New York

Lastly, LSI contends that the Court does not have personal jurisdiction over it because a court in New York can only exercise personal jurisdiction over a non-domiciliary defendant if the defendant transacts any business within the state or contracts anywhere to supply goods or services in the state. LSI overlooks the fact that it consented to personal jurisdiction when it agreed to New York as the venue for dispute resolution.

LSI consented to personal jurisdiction in this matter when it selected New York as the forum for dispute resolution. *See e.g., Doctor's Associates, Inc. v. Stuart*, 85 F. 3d 975, 983 (2d Cir. 1996) (a party who agrees to arbitrate in a particular jurisdiction consents to personal jurisdiction there); *Global Gold. Min., LLC v. Ayvazian*, 612 F. App'x 11, 13 (2d Cir. 2015) (an agreement to arbitrate in a state constitutes consent to personal jurisdiction in that state); *Bus. Credit & Capital II LLC v. Neuronexus, Inc.*, No. 1:18-CV-03374 (ALC), 2019 WL 1426609, at *3 (S.D.N.Y. Mar. 29, 2019) (defendants' agreement to arbitrate disputes in New York constituted consent to personal jurisdiction in New York); *Yukos Capital S.A.R.L. v. Samaraneftegaz*, 592 Fed. App'x 8, 10 (2d Cir. 2014) (New York had personal jurisdiction over defendant based upon an agreement to arbitrate in New York, even though the agreement did not designate the Southern District as the specific venue for arbitration). Paragraph G of the Agreement clearly lists New York as the forum for dispute resolution. As such, LSI has consented to personal jurisdiction in the Southern District of New York.

Accordingly, LSI's motion to dismiss the Amended Complaint for lack of personal jurisdiction should be denied.

**CONCLUSION**

For all of the foregoing reasons, the Motion should be denied in its entirety.

Dated: September 13, 2019
New York, New York

COHEN TAUBER SPIEVACK & WAGNER P.C.

By: /s/ Stephen Wagner
Stephen Wagner
420 Lexington Avenue, Suite 2400
New York, NY 10170
Tel.: (212) 586-5800
swagner@ctswlaw.com

*Counsel to Plaintiff*